758 So.2d 1214 (2000)
CONTINENTAL CONCRETE, INC., a Florida corporation, Appellant,
v.
LAKES AT LA PAZ III LIMITED PARTNERSHIP, a Florida limited partnership, Quality Concrete Pumping, Inc., a Florida corporation, Skilled Services Corporation, a Florida corporation, and Spengler Construction and Masonry, Inc., a Florida corporation, and Fidelity and Deposit Company of Maryland, a foreign corporation, Appellees.
Nos. 4D99-1845, 4D99-2727.
District Court of Appeal of Florida, Fourth District.
May 17, 2000.
*1215 Thomas D. Daiello of Thomas D. Daiello, P.A., Boca Raton, for appellant.
*1216 Larry R. Leiby and Douglas J. Roberts of Leiby Construction Law Firm, P.A., for appellees.
SCOLA, ROBERT N., Associate Judge.
Appellant, Continental Concrete, Inc. ("Continental"), appeals a final order of the trial court granting summary judgment and awarding prevailing attorney's fees to appellee, Lakes at La Paz III Limited ("La Paz"). We find that the entry of summary judgment and the granting of attorney's fees were proper and, therefore, affirm. We write only to discuss the issue of the legal effect of a forged lien waiver on a subcontractor's right to enforce that lien.

I.
In this case, the following undisputed facts were established:
La Paz (the owner) and Whitmer Commercial Contractors, Inc. (the general contractor) entered into a contract (the "direct contract") for construction work on a condominium building in Boca Raton. The direct contract price of the construction work was $912,000. Continental (the subcontractor) contracted with the general contractor to supply ready mix concrete materials.
From May 8, 1997 to November 17, 1997, La Paz made nine progress payments on the contract directly to the general contractor totaling $646,846.75. La Paz also received partial releases (lien waivers) indicating the subcontractors had been paid in full for all work through November 25, 1997. In the latter half of November 1997, some of the subcontractors on the project informed La Paz that the general contractor was delinquent in making its payments. Upon hearing these complaints, La Paz met with the general contractor, who admitted forging the signature of one of the subcontractors (not necessarily Continental) on some lien waivers. Believing the forgery had occurred with more than one subcontractor's lien waivers, La Paz sent a letter to the general contractor so stating. La Paz, however, did not know whether Continental's lien waivers were forged.
Between November 25, 1997 and February 25, 1998, La Paz directly paid the subcontractors $174,567.77. These direct payments were at the general contractor's request and with its consent. Three of the direct payments were to Continental in December 1997 and January 1998, totaling $11,064.28. This brought the sum of all payments by La Paz to Continental (according to the lien waivers) to $65,213.64.
In its sworn statement of account, Continental stated that to date it had received $9,995.80 and was still owed $63,012.76, plus interest of $2,712.09, totaling $65,724.85, through February 30, 1998.
Jay Hughes, the corporate credit manager for Continental, stated in his affidavit that only two of Continental's releases were signed by authorized Continental personnel. He further stated that, with the exception of one payment of $9,995.80, Continental never received the amounts set forth in the lien releases. He also alleged that on numerous occasions, Continental had informed La Paz that it had not been paid and that La Paz had assured Continental that it would receive payment. Significantly, however, there is no indication of when those conversations took place.
On February 12, 1998, La Paz terminated the general contractor based on its failure to timely pay the subcontractors. One week later, La Paz served Continental with an affidavit of abandonment and filed a notice of re-commencement. La Paz then contracted with "necessary trades" to complete the remainder of the project at a cost of $154,267.65. In total, La Paz paid out $975,682.17 for a project originally priced at $912,000 in the contract.
Continental then brought suit to foreclose on its construction lien for concrete materials it had supplied as a subcontractor to the project. La Paz filed a motion *1217 for summary judgment alleging that it had made all payments to the general contractor in a timely and proper manner, that it had received numerous lien waivers from the general contractor which were purportedly signed by representatives of Continental totaling over $64,000, and that it had paid over $975,000 for a project which had a direct contract price of $912,000. Thus, La Paz asserted, since it had made "proper payments" to the general contractor, and since those payments were in excess of the direct contract price, it was not liable to Continental for its lien.
Continental responded that several of the lien waivers submitted by the general contractor were forged and that this allegation created a genuine issue of material fact as well as an affirmative defense, thus precluding entry of a summary judgment. La Paz replied that even if the lien waivers were forged, it was permitted to rely on them, and, therefore, was not liable to Continental. The trial court, in a detailed and well-reasoned order, granted the motion for summary judgment. The court also entered an order granting appellees, as the prevailing parties below, attorney's fees and costs under section 713.29, Florida Statutes (1997). This consolidated appeal from those two orders followed.

II.
A trial court should grant a motion for summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fla. R. Civ. P. 1.510(c); Wills v. Sears, Roebuck & Co., 351 So.2d 29, 30 (Fla.1977). The burden to conclusively prove the nonexistence of a material fact is on the moving party. See Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966); Albelo v. Southern Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). Only after this burden has been met does the burden shift to the nonmoving party. Holl, 191 So.2d at 44. However, the "issue" must be one of material fact. Issues of nonmaterial facts are irrelevant to the summary judgment determination. See Fla. R. Civ. P. 1.510(c). A material fact, for summary judgment purposes, is a fact that is essential to the resolution of the legal questions raised in the case. See Fine Arts Museums Found. v. First Nat'l in Palm Beach, 633 So.2d 1179, 1180-81 (Fla. 4th DCA 1994).
On appeal, this court must apply a de novo standard of review to the trial court's decision granting La Paz's motion for summary judgment, since it was based on legal, not factual, issues. See Menendez v. Palms West Condominium Ass'n, 736 So.2d 58, 60-61 (Fla. 1st DCA 1999). Additionally, this court must "draw every possible inference in favor of the party against whom the motion is made." Wills, 351 So.2d at 32 (citation omitted).

III.
La Paz based its summary judgment motion on a "proper payments" defense. This defense provides that where "an owner fulfills all the duties the Mechanics' Lien Law places upon him, his liability for all mechanics' lien claims cannot exceed the contract price." Tamarac Village, Inc. v. Bates & Daly Co., 348 So.2d 23, 25 (Fla. 4th DCA 1977) (citation omitted). La Paz alleged that it fulfilled all the responsibilities placed upon it by law by making "proper payments" to the general contractor, ultimately paying out over $975,000.00 for a project with a direct contract price of only $912,000.00. La Paz argues that since its construction lien liability cannot exceed the contract price, Continental is precluded from foreclosing on its lien as long as La Paz, in good faith, made "proper payments" to the general contractor.
Continental claims that its allegation that some of the lien waivers were forged is an affirmative defense to the "proper payments" claim and creates a material factual issue in dispute. We disagree. Even if some of the lien waivers were forged, there is no evidence that La *1218 Paz knew, or reasonably should have known, that the lien waivers were not genuine. To the contrary, the allegations in the summary judgment motion and the attachments thereto established that La Paz, acting in good faith, fulfilled its responsibilities under Florida's Construction Lien Law and made all proper payments to the general contractor and the subcontractors.
Both Continental and La Paz are innocent persons relative to the wrongdoing by the general contractor. The issue before this court is: between these two innocent parties, which must bear the cost for the general contractor's wrongdoing? Courts have held that an owner acting in good faith is not liable to a subcontractor who provides a lien waiver yet later claims nonpayment by the general contractor. For example, in Lehman v. Snyder, 84 So.2d 312 (Fla.1955), the general contractor paid the subcontractor by way of a check that, unbeknownst to the subcontractor, would later be returned for insufficient funds. In exchange for the check, the subcontractor executed a complete release of lien. The general contractor provided the lien release to the owner. The court held as follows:
[t]he owners and the bank had a right to rely upon the release of lien executed by [the subcontractor] in making the final disbursements. They did so rely in absolute good faith and in doing so, they closed out the account with the contractor and apparently paid off the remaining lienholders. So far as the owners and the bank were informed, [the subcontractor] had been paid in full and had cancelled the lien....
Id. at 314 (emphasis added). Cf. Continental Cas. Co. v. Associated Plastics, Inc., 347 So.2d 822 (Fla. 3d DCA 1977)(owner not liable to subcontractor who submitted forged lien waivers since owner acted in good faith).
In Richard's Lumber & Supply Co. v. National Bank of Joliet, 32 Ill.App.3d 835, 336 N.E.2d 820, 822 (1975), an Illinois appeals court faced a similar issue to the one at bar. In that case, a bank moved for summary judgment and alleged that it had loaned money to a second party (Witbrod) in reliance on several lien waivers signed by a supply company. The supply company argued that Witbrod stole the lien waivers, but acknowledged that the waivers were properly signed. The trial court granted the summary judgment motion, reasoning that "the defense of theft would not equitably overcome the position of the [bank] as an innocent third party which had loaned money to the property owners in reliance on the properly signed waivers of lien...." Id. On appeal, the issue before the court was "whether the stolen waivers signed in blank by an officer of the lienor and, apparently, filled in by the debtor Witbrod, could effectively waive [the supply company's] mechanic's lien as to priority over the bank's mortgage lien." Id. The court concluded that the lien "waivers were valid as to the bank, and that the bank was entitled to rely on the waivers in paying out the money and recording its trust deed." Id. The court held that "`[w]here one of two innocent persons must suffer by the fraud of a third person, the loss must fall upon him who by his conduct put it in the power of such third person to cause the injury.'" Id. (quoting Decatur Lumber & Mfg. Co. v. Crail, 350 Ill. 319, 183 N.E. 228, 230 (1932)).
In Alton Towers, Inc. v. Coplan Pipe & Supply Co., 262 So.2d 671, 673 (Fla.1972), the Florida Supreme Court quoted from Bryan v. Owsley Lumber Co., 201 So.2d 246, 250 (Fla. 1st DCA 1967) as follows:
persons furnishing labor and material to a contractor are in a favorable position to determine the extent to which credit shall be extended before requiring payment for the amounts to become due for the services to be performed and materials to be furnished, and that if because of misplaced confidence or misjudgment on their part the contractor becomes either unwilling or unable to pay them the amount owed, they are relegated for *1219 the payment of their claims to such balance of the contract price as may remain due the contractor by the owner. Such a concept is premised upon the equitable maxim that where one of the two innocent persons must suffer as result [sic] of the default of another, the loss shall fall on him whose act made the loss possible.

(Emphasis added).
In this case, Continental was in a favorable position to determine the extent to which it should have extended credit to the general contractor. Thus, it is their "misplaced confidence" in the general contractor that has left them in this position. Though both Continental and La Paz are innocent parties, the loss in this case must fall on Continental, whose act of extending credit to the general contractor for payment made the loss possible. See id.
We hold that an owner will not be liable for a subcontractor's lien where the owner has been presented with forged lien waivers under the following circumstances:
1. The owner has fulfilled all the duties that the construction lien law requires;
2. The subcontractor has contracted with the general contractor for payment;
3. The owner has made all proper payments to the contractor and/or subcontractor;
4. The owner, in good faith, believes that the forged lien waivers are valid;
5. The "proper payments" made by the owner equal or exceed the direct contract price.
In this case, the undisputed facts established the existence of all of these circumstances and that La Paz was entitled to summary judgment. We, therefore, affirm.
We also affirm the trial court's order taxing attorney's fees and costs against Continental pursuant to the stipulation reached between the parties and section 713.29, Florida Statutes (1997).
Affirmed.
KLEIN and TAYLOR, JJ., concur.