898 So.2d 955 (2005)
CITY OF ST. PETERSBURG, Appellant,
v.
Donald AUSTRINO and Maria Austrino, his wife, Appellees.
No. 2D02-5802.
District Court of Appeal of Florida, Second District.
February 9, 2005.
Rehearing Denied April 20, 2005.
*956 John C. Wolfe, City Attorney, and Deborah Glover-Pearcey, Assistant City Attorney, St. Petersburg, for Appellant.
Marcus A. Castillo of Haas & Castillo, P.A., Clearwater, for Appellees.
CASANUEVA, Judge.
The City of St. Petersburg appeals a jury finding of liability for false arrest and an award of damages of $45,000, for which the City was found to be ninety percent liable.[1] We affirm on all points raised, writing only to comment on the issue of probable cause.
At approximately 5:00 a.m. on April 9, 1998, fifty-five-year-old Donald Austrino was awoken and arrested in his home by City of St. Petersburg Police Officer John Douglas for prescription fraud, a violation of section 893.13, Florida Statutes (1997). Allegedly, Mr. Austrino had violated the law by altering a prescription in order to obtain an unauthorized refill for Vicodin, a controlled substance.
Two days earlier, Mr. Austrino had been treated by Dr. Scott Plantz at the emergency room of St. Anthony's Hospital for complaints arising from kidney stones. Following the examination, the ER physician released him and prescribed two medications: Vicodin and Anaprox. Because Mr. Austrino was shortly to depart on vacation, and so he would not be caught without sufficient medication, Dr. Plantz wrote the prescription with one refill noted. He wrote the designation for one refill on the prescription in his typical handwriting, which the doctor described as merely printing the numeral. The doctor did not customarily note the number of permitted refills on the patient's chart, and he did not do so in this instance either. It was unusual, but not unheard of, for an ER physician to prescribe a refill.
Of importance to the circumstances of this case, the doctor was not contacted prior to Mr. Austrino's arrest by any hospital personnel, any pharmacist employed by Walgreen's, or by Officer Douglas.
Mrs. Austrino took the prescription to a Walgreen's pharmacy to be filled during *957 the next day, April 8. This store was near their home where they had lived for over twenty years, and she had been taking all the family's prescriptions to its pharmacy for at least ten years. She received the medication without any question. Late that evening, Ms. Jean Fernandez, the night shift staff pharmacist on duty, reviewed all the prescriptions filled that day, including Mr. Austrino's. The first thing that caught her eye about this prescription was that an ER physician had ostensibly authorized a refill. Further, it appeared to her to be written with a different pen, did not appear to be the same writing as on the rest of the prescription, and the numeral itself was of a different type than elsewhere on the prescription. She thus became suspicious of the refill's authenticity and contacted the hospital. She did not speak to Dr. Plantz. Instead, she spoke with an ER nurse at the hospital who pulled Mr. Austrino's chart. The chart, although noting that a narcotic had been prescribed, contained no indication that a refill had been authorized. The nurse was not on the same shift as Dr. Plantz and did not speak with Dr. Plantz before confirming Ms. Fernandez's belief that ER physicians do not usually prescribe refills. Based on her conversation with the ER nurse, the pharmacist noted on the back of the prescription that she had verified with the ER that the doctor had not authorized the refill. Because this indicated to her that a crime had been committed, she reported it to the police department, which dispatched Officer Douglas. She and Officer Douglas were acquainted with each other as they had previously worked together on similar claims. Officer Douglas responded to the Walgreen's shortly after 4 a.m. on April 9.
Ms. Fernandez told the officer that she had determined that the prescription was forged because the numeral "1" in the refill space was different from the rest of the script, and she had verified with the hospital that a refill had not been authorized. The officer examined the prescription himself. He did not contact either the hospital or Dr. Plantz; instead, he went directly to Mr. Austrino's home. Mr. Austrino, although awakened from a sound sleep, was cooperative with the officer but denied altering the prescription. Both he and Mrs. Austrino, who was nearly hysterical at this point, asked the officer to contact the doctor to confirm that the refill was authorized. Mr. Austrino testified at trial that the officer told him then that he had already spoken to the doctor, who denied authorizing the refill.[2] Despite Mr. Austrino's continued denial of wrongdoing, the officer arrested him at approximately 5 a.m. Mr. Austrino was taken to jail, booked, and required to submit to a body cavity search. Around noon, after the police department learned from the doctor that he had, in fact, written the authorization for one refill, as Mr. Austrino had previously maintained, Mr. Austrino was released from jail.
The gravamen of the tort of false arrest is the unlawful restraint of a person against that person's will. Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699, 700 (1944); Spears v. Albertson's Inc., 848 So.2d 1176, 1178 (Fla. 1st DCA 2003). In a false arrest action, probable cause is an affirmative defense to be proven by the defendant. Bolanos v. Metro. Dade County, 677 So.2d 1005, 1005 (Fla. 3d DCA 1996).
Probable cause is a fluid concept. The courts recognize that probable cause for an arrest may be based upon hearsay and *958 does not require the same quantum of evidence needed to sustain a conviction. Otherwise, as Judge Learned Hand wrote, "the powers of the peace officers are to be so cut down that they cannot possibly perform their duties." United States v. Heitner, 149 F.2d 105, 106 (2d Cir.1945). Thus, law enforcement officers are afforded some latitude for error. See Lee v. Geiger, 419 So.2d 717, 719 (Fla. 1st DCA 1982) ("[T]he facts in this case show that at most Detective Lee was guilty of poor judgment in conducting his investigation...."). However, their mistakes "must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
The Supreme Court reaffirmed in 1983 "the totality of the circumstances analysis that traditionally has informed probable cause determinations." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Focusing on the totality of circumstances requires an assessment of probabilities in that particular factual context. These probabilities are "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. at 231, 103 S.Ct. 2317 (quoting Brinegar, 338 U.S. at 175, 69 S.Ct. 1302). From these considerations, common sense conclusions regarding human behavior can be reached. The facts and circumstances, based upon reasonably trustworthy information, must be such that "would cause a prudent person to believe" the suspect has committed a crime. Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir.2002) (quoting Williamson v. Mills, 65 F.3d 155, 158 (11th Cir.1995)).
With these standards in mind, we turn to an analysis of the facts in this case. The City of St. Petersburg asks us to review, in the light most favorable to the Austrinos, the trial court's failure to grant summary judgment to the City and the sufficiency of the evidence for the jury award in favor of the Austrinos. If we concluded that there were no material facts in dispute, then in order to reverse, we would be required to find that the City established, as a matter of law, that Officer Douglas had probable cause to arrest Mr. Austrino at 5:00 a.m. on April 9. Because the evidence and all inferences from it lead inevitably to the conclusion that Officer Douglas arrested Mr. Austrino without conducting a reasonable investigation, we hold that the facts and circumstances known to the officer were insufficient to give rise to probable cause. See Liabos v. Harman, 215 So.2d 487 (Fla. 2d DCA 1968) (holding that it was error to enter summary judgment when there remained a material issue of fact about whether store employees had probable cause to sign an affidavit alleging that the plaintiff wrote worthless checks to the store; the jury could well decide that further investigation was warranted by the facts).
On the most basic level, the trial court was correct in denying the City's motion for summary judgment because there were material facts in dispute. See Medina v. Yoder Auto Sales, Inc., 743 So.2d 621 (Fla. 2d DCA 1999) (holding that summary judgment is improper if the record raises the slightest doubt that a factual issue might exist). At the time of the City's motion for summary judgment, there was deposition testimony from one of Officer Douglas's fellow officers; he had called her shortly after arresting Mr. Austrino and reported that he had personally called the prescribing doctor to verify that the prescription form had been altered. When motions for summary judgment turn on issues of credibility, summary judgment is improper. Sutherland v. Pell, 738 So.2d 1016 (Fla. 2d DCA 1999). There were still *959 other factual matters in dispute, such as the pharmacist's noting on the back of the prescription that her contact at the ER had verified that the ER doctor had not authorized the refill. Although Officer Douglas's suspicions may have been properly aroused by the pharmacist's report, a reasonably prudent police officer would have conducted further investigation before determining that he had cause to arrest.
In Rankin v. Evans, 133 F.3d 1425 (11th Cir.1998), the plaintiffs asserted that a Palm Beach County Sheriff's deputy falsely arrested the plaintiff without probable cause due to an improper investigation. The court stated: "An arresting officer is required to conduct a reasonable investigation to establish probable cause." Id. at 1435; see also Harris v. Lewis State Bank, 482 So.2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a `cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information."). In Rankin, the investigating sheriff's deputy interviewed the three-and-a-half-year-old child abuse victim, who identified her alleged abuser by his nickname; the child's mother; and the child's pediatrician, who had examined her and found signs indicating possible sexual abuse. This investigation was found sufficient to provide probable cause for the arrest although Mr. Rankin was later exonerated. 133 F.3d at 1437. "In the context of an arrest which requires probable cause, it is incumbent upon a police officer to make a `thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention.'" Mahon v. City of Largo, 829 F.Supp. 377, 386 (M.D.Fla.1993) (quoting BeVier v. Hucal, 806 F.2d 123, 127 (7th Cir.1986)).
The probable cause investigation is a function of both factual information and exigency. BeVier, 806 F.2d at 127. In BeVier, where a charge of child neglect led to a civil suit for false arrest, probable cause was found lacking because the investigating officer made the mistake of failing to question the parents, the medical personnel who treated the child, or the baby-sitter who was taking care of the child when the alleged neglect was identified. The court found the officer's mistake was unreasonable when a few questions would have provided him some important information. Id.
Inquiry into the reasonableness of an officer's perceptions of critical facts supporting an arrest does not focus upon facts not available to him at the time. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "By the same token, however, it must charge him with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances." Sevigny v. Dicksey, 846 F.2d 953, 957 n. 5 (4th Cir.1988). "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." BeVier, 806 F.2d at 128.
We review the basis for the probable cause by focusing upon the facts known to Officer Douglas at the time of the arrest along with any exigencies that affected his ability to undertake a thorough investigation, keeping in mind that a reasonable amount of investigation is always warranted. "Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place." Id. The crime of prescription fraud is not one of possession, of either the prescription or the illegally obtained drug, but rather one of intent and *960 action. It was the officer's role to investigate and establish probable cause to conclude that the prescription had been altered from the original and then to identify the person who inserted the number for the refill.
Here, the source of the officer's information was first and only Ms. Fernandez, the Walgreen's night pharmacist, who did not herself fill this prescription. What she reported to the officer was the result of her personal investigation consisting of undocumented hearsay. Although an identification or a report from a single credible victim or eyewitness can provide the basis for probable cause, Woods v. City of Chicago, 234 F.3d 979 (7th Cir.2000), Ms. Fernandez was neither of these. She reported that the number "1" on the prescription denoting the allowable refills seemed to her to be different from the others on the prescription, she thought that the ink with which it was written also appeared different, and she believed, based on her experience, that ER physicians did not prescribe refills. The record is unclear whether she informed the officer of her familiarity with the physician's handwriting or office procedures or any knowledge of Mr. Austrino's history with the pharmacy. Although she told the officer that she had sought further information from personnel then on duty at the hospital, at best they provided information that the records did not indicate a refill had been authorized. However, neither did the records indicate that a refill had been precluded.
Because of the hearsay nature of the information provided by the pharmacist, it was incumbent upon the police officer to further investigate whether there was probable cause to believe a crime had been committed. The primary problem here is that the officer undertook no investigation of his own; instead, he apparently relied solely upon that undertaken by the pharmacist. In essence, he abrogated his responsibility to investigate the circumstances of a crime to the pharmacist who was, at best, remote from what had occurred and untrained in proper investigative techniques. Proper investigation would have also uncovered the fact that it was Mrs. Austrino, not Mr. Austrino, who presented the prescription for filling. The persons who were the source of information for the pharmacist did not write the prescription, were not present at the time the prescription was written, and had no direct knowledge of that event. The lack of a direct source of information was known by the officer and was a fact whose significance he should have realized. This compounded his failure to conduct a reasonable investigation. A simple telephone call to Dr. Plantz would have provided the officer with the necessary factual information to make a reasonable probable cause determination. If the officer was reluctant to disturb the physician's slumber because of the early morning hour, he had only to wait a few hours to obtain the necessary information.
Alternatively, the officer, by contacting the hospital, could have identified the staff who had assisted during Mr. Austrino's hospital visit, staff who might have provided direct evidence regarding the prescription or easily put him in touch with the doctor. See BeVier, 806 F.2d at 127 (discussing Moore v. The Marketplace Restaurant, 754 F.2d 1336 (7th Cir.1985), where the police awakened suspects who were sleeping and arrested them for failing to pay a restaurant check, without further questioning, once they admitted they had been to the restaurant that evening; summary judgment reversed). Officer Douglas did not speak to any hospital staff before arresting Mr. Austrino; his questioning of these potential witnesses would *961 have provided a sounder basis upon which to determine probable cause.[3] Furthermore, this record contains no information suggesting that exigent circumstances existed, e.g., that Mr. Austrino was a flight risk, so as to abridge the ability to further investigate. Instead, without further delay or investigation, the officer elected at 5 a.m. to arrest Mr. Austrino  without questioning according to Mr. Austrino  even though it was Mrs. Austrino who presented the allegedly falsified prescription to the pharmacy.[4] He roused longtime, stable residents of the neighborhood and customers of the store, denied their reasonable request that he contact the doctor, and precipitously made an arrest.
At the moment of the arrest, Officer Douglas possessed no information indicating a crime had been committed, only his suspicion and the unsubstantiated belief of the pharmacist. No exigent circumstances circumscribed the time he possessed to undertake or to continue an investigation. Simply stated, the officer conducted no investigation of his own, much less a reasonable one, before arresting Mr. Austrino. "[I]t is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention." Moore, 754 F.2d at 1346. This failure supports the trial court's denial of the City's motion for summary judgment and the jury's final conclusion that the officer lacked probable cause to justify Mr. Austrino's arrest. Had the officer known what he could have easily learned from common prudence, a simple phone call to the doctor, and appropriate investigation, he would not have arrested Mr. Austrino.
Finally, we note that if Officer Douglas had, in fact, reviewed the hospital records, probable cause might have existed. But, it is equally likely that the ambiguity found in the hospital records regarding whether an authorization for a refill existed might have prompted an investigative call to the physician.
Judging "not with clinical detachment, but with a common sense view to the realities of normal life[,]" Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir.1985), we hold that Officer Douglas failed to conduct a reasonable investigation and had no probable cause to arrest. Accordingly, we affirm the judgment against the City of St. Petersburg for the false arrest of Mr. Austrino.
GREEN, OLIVER L., Senior Judge, Concurs.
CANADY, J., Dissents with opinion.
CANADY, Judge, Dissenting.
Because I conclude that the City of St. Petersburg was entitled to summary judgment on the issue of probable cause, I dissent from the majority's affirmance of the judgment against the City. Although Officer Douglas arrested Mr. Austrino on the basis of information that ultimately was determined to be inaccurate, I conclude that at the time Officer Douglas *962 made the arrest, he had an adequate basis for determining that probable cause existed.
Among the issues raised by the City on appeal is the claim that the trial court erred in denying the City's motion for summary judgment on the question of probable cause. The City argues that the undisputed material facts before the trial court on the City's motion for summary judgment showed that the arrest of Mr. Austrino was based on probable cause and the City was therefore entitled to judgment as a matter of law.
Our review of the trial court's denial of the City's motion for summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). When the facts material to a probable cause determination are undisputed, the existence of probable cause "`is for the court to decide as a question of law.'" Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1357 (Fla.1994) (quoting Cold v. Clark, 180 So.2d 347, 349 (Fla. 2d DCA 1965)).
The constitutional validity of a warrantless arrest turns on whether, at the moment the arrest was made, the officers had probable cause to make it  whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the person arrested] had committed or was committing an offense.
Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); see also Devenpeck v. Alford, ___ U.S. ___, ___, 125 S.Ct. 588, 593, 160 L.Ed.2d 537, 544 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from facts known to the arresting officer at the time of the arrest."). The "standard of probable cause" is "only the probability, and not a prima facie showing, of criminal activity." Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (citing Beck, 379 U.S. at 96, 85 S.Ct. 223). "[T]he nature of the [probable cause] determination itself ... does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." Gerstein v. Pugh, 420 U.S. 103, 121, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).
Here the undisputed material facts on the motion for summary judgment showed that: (1) The "1" appearing in the refill blank on the prescription was printed in a different style and with a different type of ink than the other 1s on the prescription. (2) Officer Douglas was told by the complaining pharmacist that she had verified by phone with St. Anthony's Hospital  through nursing personnel who consulted Mr. Austrino's chart  that the prescription for Vicodin issued to Mr. Austrino had no authorized refills. (3) Officer Douglas had in previous cases relied on information provided by the complaining pharmacist in making arrests for criminal offenses involving prescriptions. (4) The complaining pharmacist had never previously provided information to Officer Douglas that was inaccurate. (5) The prescription was presented to the pharmacy on behalf of Mr. Austrino. These undisputed facts are sufficient to establish probable cause for the arrest of Mr. Austrino for a violation of section 893.13(7)(a)(9).
As a basis for the trial court's denial of the City's motion for summary judgment, the majority points to conflicts in the evidence concerning whether Officer Douglas had claimed to have personally called the prescribing physician before arresting Mr. Austrino. But any conflict on that factual point was not material."Issues of nonmaterial facts are irrelevant" to the determination of a motion for summary judgment. *963 Cont'l Concrete, Inc. v. Lakes at LaPaz III Ltd. P'ship, 758 So.2d 1214, 1217 (Fla. 4th DCA 2000); see also Fla. R. Civ. P. 1.510(c). "A material fact, for summary judgment purposes, is a fact that is essential to the resolution of the legal questions raised in the case." Cont'l Concrete, 758 So.2d at 1217. Here, the record is clear that the City conceded that Officer Douglas had not made contact with the physician prior to the arrest. In his deposition testimony, Officer Douglas admitted that he had not contacted the physician. That testimony was consistent with the physician's deposition testimony. Whether Officer Douglas had made inconsistent statements on that point to a fellow officer was not relevant to the critical issue of whether the information he had undisputedly received from the pharmacist provided a sufficient basis for probable cause.
The majority also states that there was a factual dispute concerning the pharmacist's notation on the back of the prescription that her contact at the hospital had verified that the prescribing physician had not authorized the refill. But it was undisputed that such a notation was made by the pharmacist. And the basis for that notation  the pharmacist's contact with nursing staff at the hospital who consulted Mr. Austrino's chart  was similarly undisputed.
In short, this is not a case in which "the facts relied on to prove [the existence or] lack of probable cause are in dispute." Liabos, 215 So.2d at 488. What is in dispute here is not the material facts, but the legal significance of the undisputed material facts.
The crucial legal issue turns on whether the arresting officer reasonably relied on the information provided to him by the complaining pharmacist. Contrary to the majority, I conclude that the information relied on by Officer Douglas was "reasonably trustworthy" and "sufficient to warrant a prudent man in believing that" Mr. Austrino had committed the offense for which he was arrested. Beck, 379 U.S. at 91, 85 S.Ct. 223. The information on which Officer Douglas relied was provided by a pharmacist who was known by Officer Douglas to be a reliable source of information. A prudent person would rely on information provided by a pharmacist concerning a prescription presented to the pharmacy at which the pharmacist was employed  particularly when the pharmacist had provided reliable information in the past. And Officer Douglas had no basis for doubting the accuracy of the information provided by St. Joseph's Hospital to the complaining pharmacist concerning the lack of authorization for a refill. A prudent person would be justified in believing that the hospital records  which were the underlying basis for the information  concerning a prescription for a controlled substance would be accurate and complete. As Officer Douglas stated in his deposition testimony concerning the omission from Mr. Austrino's chart at the hospital of any indication that a refill was authorized:
He [ i.e., the prescribing physician ] ain't giving aspirin here. He is giving out a controlled substance. There is a big difference giving aspirin to somebody and not putting it in the chart and giving them a prescription for Vicodin which is a controlled substance,  which is  the most abused substance on the market is Vicodin right now.
"[P]robable cause, ... as the very name implies, ... deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar, 338 U.S. at 175, 69 S.Ct. 1302. It is reasonable to rely on pharmacists and hospital *964 staff with respect to reports concerning the dispensing of pharmaceuticals, particularly controlled substances. The practice of pharmacy is "a learned profession." § 465.002, Fla. Stat. (1997). Pharmacists are licensed and heavily regulated under chapter 465. The prescription drug involved here, Vicodin  which contains hydrocodone  is a controlled substance. See Hayes v. State, 750 So.2d 1, 1 (Fla.1999). Hydrocodone is governed by section 893.03(3). While a pharmacist can dispense such substances by oral prescription, the prescription must promptly be reduced to writing by the pharmacist. § 893.04(1)(a). Section 893.04 contains numerous requirements for prescriptions for controlled substances concerning content and retention of prescriptions, including dating and signing the prescriptions and documenting the filling pharmacist, prescriber, patient, and number of refills. This section also includes label requirements for drug identification and warnings concerning use and prohibition against transfer.
Florida law specifically recognizes the practice of prescribing medicine by telephone, including the telephonic issuing of prescriptions by a physician's staff. Included in the statutory definition of prescription is "an orally transmitted order by the lawfully designated agent of [the prescribing] practitioner." § 465.003(14). Since medicine is routinely prescribed by telephone and dispensed on the basis of such oral orders, it was reasonable for the pharmacist in this matter to rely on information from hospital staff as to the content of the prescription written by the emergency room doctor. In turn, it also was reasonable for the police officer to rely on the pharmacist to accurately report to him the information obtained from the doctor's staff.
The fact that the information that no refill was authorized was inaccurate does not mean that it was unreasonable for Officer Douglas to rely on it. See Harris v. Eckerd Corp., 796 So.2d 719 (La.Ct.App.2001) (affirming summary judgment in favor of city on false arrest claim where arresting officer relied on information provided by complaining pharmacist and that pharmacist had contacted wrong physician's office and had obtained inaccurate information concerning prescription). As the majority acknowledges, the fact that information relied on by the arresting officer is "ultimately found to be mistaken" does not negate the existence of probable cause if the conduct of the officer was "objectively reasonable" under the pertinent circumstances. United States v. Gonzalez, 969 F.2d 999, 1004 (11th Cir.1992). "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part." Brinegar, 338 U.S. at 176, 69 S.Ct. 1302. "[T]he mistakes ... of reasonable men, acting on facts leading sensibly to their conclusions of probability[,]" are mistakes that will not defeat a probable cause determination. Id.
As the majority also acknowledges, probable cause determinations may properly be based on hearsay. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); see also Smith v. State, 450 So.2d 480, 480 (Fla.1984) (holding that the State in "demonstrating the veracity of hearsay information relied on for an arrest" need not show "both the credibility of the informant and the reliability of his information"). But the majority opinion unjustifiably moves from a statement of the principle that "probable cause for an arrest may be based on hearsay" to the conclusion that "[b]ecause of the hearsay nature of the information provided to the pharmacist, it was incumbent upon the officer to further investigate whether there was probable cause to believe *965 a crime had been committed" (emphasis supplied).
Hearsay is allowed as a basis for establishing probable cause because there is a fundamental difference between the process for determining that probable cause exists and the process for determining guilt in a criminal trial. See Gerstein, 420 U.S. at 121, 95 S.Ct. 854. A general requirement to conduct a "thorough" investigation of the facts relating to a criminal offense threatens to undermine this fundamental distinction. Such a requirement would in effect impose a standard on law enforcement officers making probable cause determinations that "goes much too far in confusing and disregarding the difference between [w]hat is required to prove guilt in a criminal case and what is required to show probable cause for arrest." Brinegar, 338 U.S. at 172-73, 69 S.Ct. 1302. As a practical matter, the adoption of such a requirement would be a step toward mandating that the police "conduct a mini-trial before arresting" a suspect. Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.1996) (holding that police did not have a duty to investigate defendant's alibi before making probable cause determination).
Probable cause does not require that the police conduct what is determined by hindsight to have been a thorough investigation. A requirement to further investigate the basis for probable cause is applicable only when the circumstances give the officer good reason to be suspicious concerning the reliability of the incriminating information known to the officer. An investigation leading to an arrest must be thorough only in the sense that it is sufficient to produce reasonably trustworthy information that is a proper basis for probable cause. See Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir.2004) ("[T]he law is clear that once police officers are presented with probable cause to support an arrest, no further investigation is required at that point."); Klein v. Long, 275 F.3d 544, 551 (6th Cir.2001) (stating that "known exculpatory evidence" must be considered by officers "in their assessment of probable cause" but that "once a police officer has sufficient probable cause to arrest, he need not investigate further"); Guzell v. Hiller, 223 F.3d 518, 519-20 (7th Cir.2000) ("Police are entitled to base an arrest on a citizen complaint, whether of a victim ... or a nonvictim witness, without investigating the truthfulness of the complaint, unless ... they have reason to believe it's fishy."); Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir.2000) (holding that officer's failure to verify forgery with person whose name was believed to have been forged by defendant did not defeat probable cause determination and stating that "[a]lthough an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause"); Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir.1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.... [W]ith hindsight it becomes far easier to portray any person charged with making a close discretionary decision in a pejorative light."); Marx v. Gumbinner, 905 F.2d 1503, 1507 n. 6 (11th Cir.1990) (stating that arresting officers "were not required to forego arresting [the suspect] based on initially discovered facts showing probable cause simply because [the suspect] offered a different explanation"); Krause v. Bennett, 887 F.2d 362, 371 (2d Cir.1989) (quoting United States v. Manley, 632 F.2d 978, 984 (2d Cir.1980)) ("It *966 bears repeating that probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. `It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon' the situation."); Schertz v. Waupaca County, 875 F.2d 578, 583 (7th Cir.1989) ("[O]nce police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence."); Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir.1988) ("A policeman ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").
The cases stating that an officer should have further investigated the basis for probable cause before making an arrest are cases in which there was some salient circumstance indicating that the information on which the officer relied was not trustworthy. None of the cases relied on by the majority holds that once an officer has reasonably trustworthy information that a crime has been committed the officer must refrain from conducting an arrest until he has further verified the accuracy of that reasonably trustworthy information. Nor do any of those cases support the conclusion that an arrest for a felony offense involving a prescription for a controlled substance  or for any other felony offense  can be made only during normal business hours.
Would it have been a better practice for Officer Douglas to obtain additional evidence before arresting Mr. Austrino? The answer to that question is most certainly "yes." But that does not mean that the arrest of Mr. Austrino was not based on probable cause. Was Mr. Austrino's arrest in some sense wrongful? The answer to that question is also obviously "yes." Any time a person is arrested for a crime that person did not in fact commit the person has suffered an indignity that is ultimately unjustified. But our law does not afford a remedy to all of the people who are arrested for crimes they did not commit. An arrest is wrongful in the eyes of the law, and a remedy is provided for the wrong only if probable cause for the arrest was lacking. Here, the undisputed facts showed that the arrest of Mr. Austrino was based on probable cause. The City therefore was entitled to summary judgment.
NOTES
[1] Walgreen's, the other defendant, settled before trial, but the jury found it ten percent negligent.
[2] When the officer was called to testify at trial, he denied saying this to Mr. Austrino. Such credibility determination was properly left up to jury.
[3] Based upon the efforts of Mr. Austrino's son, the prescribing physician was contacted within a few hours and verified that he had, in fact, authorized the refill.
[4] We do not hereby suggest that there was probable cause to arrest Mrs. Austrino, as there was not, but merely point out that the officer still had suspects to rule out before jumping to the unwarranted conclusion that it was Mr. Austrino who altered the prescription. The evidence would later show that Mr. Austrino never touched the prescription. The prescription was given directly to Mrs. Austrino at the hospital; she put it in her purse where it stayed until she took it to the Walgreen's pharmacy to be filled the next morning.