938 So.2d 985 (2006)
CITY OF CLEARWATER and CHARLES ESPOSITO, Appellants,
v.
TONY WILLIAMSON, Appellee.
Case No. 2D05-2936.
District Court of Appeal of Florida, Second District.
Opinion filed July 28, 2006.
Paul Richard Hull, Assistant City Attorney, Clearwater, for Appellants City of Clearwater and Charles Esposito.
W. Clay Mitchell, Orlando, for Appellee.
CASANUEVA, Judge.
The City of Clearwater and Charles Esposito, a former Clearwater police detective, appeal from a judgment entered after a jury found them liable for malicious prosecution, false arrest and imprisonment, and intentional infliction of emotional harm. We reverse because Detective Esposito possessed probable cause to arrest.
This case was previously before this court after the trial court denied Detective Esposito qualified immunity by refusing to enter a summary judgment in the detective's favor on a claim that Tony Williamson brought pursuant to 42 U.S.C. § 1983 (1995). Esposito v. Williamson, 854 So. 2d 694 (Fla. 2d DCA 2003) (reversing denial of summary judgment and grant of qualified immunity under 42 U.S.C. § 1983 (1995) and holding that a reasonable officer could have believed that there was probable cause for the arrest). Consequently, on remand from Esposito, two counts of the five-count complaint were dismissed before trial and the remaining three counts went to trial, where the primary issue was the existence of actual probable cause.

Evidence Adduced At Trial
Detective Esposito arrested Mr. Williamson after conducting an investigation into an allegation by his former girlfriend, Diana Grimmage, that he molested her two-year-old daughter, M.L, in January 1996. During the latter months of 1995, Mr. Williamson and Ms. Grimmage lived together in her apartment with her two children, M.L. and Ms. Grimmage's other daughter, who was born during this time frame. They parted ways about two weeks before the alleged incident for a variety of reasons, and the breakup apparently was not amicable. During the time that they lived together, Mr. Williamson bonded with the two children, and he promised to visit them on Sunday, January 14, 1996. However, he was delayed and arrived at the apartment after midnight.
Ms. Grimmage claimed that while he was at her apartment, she left to take a shower and afterwards, when she entered the bedroom, she saw Mr. Williamson with his hand down the front of M.L.'s underwear, palm inwards, with his hand moving up and down. When she asked him what he was doing, he became angry and defensive and stormed out of the residence. The next day, Tuesday, around noon, she called Clearwater police and registered a complaint, accusing Mr. Williamson of sexually fondling M.L. She told Officer Robert Fava, the first responder, that she had delayed calling the authorities because Mr. Williamson had threatened her with physical violence if she reported the incident and that in the past he had been verbally violent and threatened her. Officer Fava took down the initial report, requested that an additional patrol be assigned to her address because of her fear for her safety, and called in Detective Esposito to continue the investigation. The detective arrived within the hour and was briefed on the situation by Officer Fava before speaking to Ms. Grimmage.
Officer Fava's written report, completed and filed later on Tuesday after he briefed Detective Esposito, states that the alleged incident with M.L. occurred in the late afternoon of Monday, the previous day. Ms. Grimmage's account to Detective Esposito of the incident and the circumstances of her history with Mr. Williamson were consistent, in the main, with what she had told Officer Fava, including the time frame of the incident. Detective Esposito's recollection of his face-to-face interview with Ms. Grimmage was that Mr. Williamson left immediately after the incident; however, he was not focusing at that moment on when Mr. Williamson had arrived or how long he had stayed. The detective arranged for a physical exam of M.L. on Thursday, but the results of this exam were nonspecific. The exam revealed redness and inflammation that could be attributed to sexual molestation, but these symptoms were not conclusive and could have been caused by other activity as well. The story Ms. Grimmage told the Child Protective Team (CPT) investigator at the time of the medical exam was also consistent with what she had told the law enforcement officers.
On the day of the exam, Thursday, the detective, who knew that Mr. Williamson had an outstanding warrant on an unrelated charge, arranged for another officer to arrest Mr. Williamson and bring him to the police station that afternoon. While there, the detective spoke to Mr. Williamson about Ms. Grimmage's allegations. Mr. Williamson, while admitting that he was at Ms. Grimmage's apartment on Monday morning, vehemently denied molesting the child, saying he did not see M.L. before he left the apartment sometime in the morning to go look for work. Detective Esposito's suspicions were aroused because the detective did not indicate which daughter was involved, and Mr. Williamson mentioned the alleged victim by name in denying that he molested her. At this point, the detective was under the mistaken impression that the incident had occurred around 10 a.m. on Monday. But, before the detective mentioned the time of the alleged incident, Mr. Williamson said he had left around 10 a.m.
Other things about Mr. Williamson's history also were troublesome for Detective Esposito and fit with the detective's prior experiences with child molesters: Mr. Williamson had previously been arrested for domestic battery involving both his ex-wife and daughter, who was at the time fifteen years old; and Mr. Williamson's father was regularly physically abusive to him while he was growing up. In his defense, Mr. Williamson told the detective that Ms. Grimmage had not wanted him to move out and had threatened calling the authorities to allege child abuse against him if he should ever leave her. At that time, sometime before Christmas 1995, Mr. Williamson told three different people about her threats: an ex-girlfriend with whom he was still friendly, the manager of the apartment complex where Ms. Grimmage lived, and Ms. Grimmage's foster mother.
Pausing in this preliminary interview with Mr. Williamson to follow up on the information Mr. Williamson provided, Detective Esposito contacted Mr. Williamson's ex-girlfriend, who confirmed that Mr. Williamson had told her of Ms. Grimmage's threats to him. When the detective resumed the interview with Mr. Williamson, Mr. Williamson reiterated that after he left the apartment Monday morning, he went to several places to turn in job applications and did not return to Ms. Grimmage's apartment that day. The detective at this time was still mistakenly thinking that the incident occurred in the morning, so this last statement by Mr. Williamson did not dissipate his suspicions. The interview was halted temporarily so the detective could make further calls. Before again resuming the interview, Detective Esposito talked with Officer Fava, who recounted that the manager of the apartment complex had confirmed to him that Mr. Williamson had told her of threats made by Ms. Grimmage; but apparently the manager had no reason to disbelieve Ms. Grimmage. Officer Fava also told him that Ms. Grimmage's foster mother was present at his interview with the manager, and she never questioned Ms. Grimmage's credibility or indicated to Officer Fava that Ms. Grimmage's allegations could be false. Based on what he had discovered to this point, around 9 p.m. Thursday, Detective Esposito arrested Mr. Williamson.
Detective Esposito continued his investigation the next day and discovered a thirteen-year-old neighbor who had been passing by Ms. Grimmage's apartment around 4:30 p.m. that previous Monday and heard a man and woman arguing loudly, yelling and cursing. At this point, the detective realized that he had told Mr. Williamson during his interviews the day before the wrong time of the alleged incident. And although Mr. Williamson had given him some indication of an alibithat after he left Ms. Grimmage he turned in several job applications at various locations during the daythe detective did not think that mere job applications, unlike a job interview, would aid in his investigation, or substantiate Mr. Williamson's alibi or his statement that he did not return to Ms. Grimmage's that Monday after he left. Nor could he seek more clarification from Mr. Williamson because by Friday, Mr. Williamson had invoked his Fifth and Sixth Amendment rights. Detective Esposito, at the time he arrested Mr. Williamson on Thursday and thereafter, believed Ms. Grimmage was the more credible. On Friday, during the detective's follow-up activities, Ms. Grimmage confirmed to him that Mr. Williamson had arrived at her apartment on Monday shortly after midnight.
The jury did not agree with the detective's assessment of Ms. Grimmage's credibility. At the trial on the criminal charge of lewd and lascivious behavior with a minor, the jury found Mr. Williamson not guilty. Because Mr. Williamson believed that Detective Esposito lacked probable cause and failed to properly investigate the allegations against him before his arrest, he instituted the civil suit underlying this appeal and prevailed. The City of Clearwater, on behalf of itself and Detective Esposito,[1] claims that the detective did not lack probable cause; therefore, because all the civil claims are founded on lack of probable cause, the trial court erred in denying the motions for directed verdict. We agree with the City.

Discussion
Because this case involves the underlying question of the presence of probable cause, we apply a de novo standard of review. State v. Glatzmayer, 789 So. 2d 297 (Fla. 2001); Metropolitan Dade County v. Norton, 543 So. 2d 1301 (Fla. 3d DCA 1989). Based on the following analysis, we hold that the trial court erred in submitting this case to the jury because, as a matter of law, Detective Esposito had probable cause to arrest Mr. Williamson. Cf. City of St. Petersburg v. Austrino, 898 So. 2d 955 (Fla. 2d DCA 2005) (holding that an identification or a report from a single credible victim or eyewitness can provide the basis for probable cause, but the arresting detective did not make adequate investigation to establish probable cause prior to making arrest for prescription fraud), review denied, 911 So. 2d 97 (Fla. 2005).
"Probable cause is a fluid concept." It affords law enforcement officers some latitude for error. Austrino, 898 So. 2d at 957-58. To determine whether probable cause exists in a case, the court must examine the totality of circumstances. "Focusing on the totality of circumstances requires an assessment of probabilities in that particular factual context. These probabilities are 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Id. at 958 (citing Illinois v. Gates, 462 U.S. 213, 231 (1983)). Because of its fluid nature, no formula can precisely determine probable cause. "Rather, it is the 'probability, and not a prima facie showing, of criminal activity [that] is the standard of probable cause.' " Doorbal v. State, 837 So. 2d 940, 952-53 (Fla. 2003) (quoting Illinois v. Gates, 462 U.S. at 235; citations omitted). Within these parameters, a court can state that probable cause "exists where an officer 'has reasonable grounds to believe that the suspect has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction.' " Chavez v. State, 832 So. 2d 730, 747 (Fla. 2002) (quoting Walker v. State, 707 So. 2d 300, 312 (Fla. 1997)).
Here, the arrest was for an alleged violation of section 800.04, Florida Statutes (1995), which makes it unlawful for a person to commit a lewd, lascivious, or indecent assault or act upon a child. To make an arrest for a violation of this statute, Detective Esposito required probable cause to believe that the following occurred: Mr. Williamson handled, fondled or assaulted a child; the child was less than sixteen years of age; and the act was done in a lewd, lascivious, or indecent manner.
The facts of this case as known to the detective before he arrested Mr. Williamson show the following. After arriving at Ms. Grimmage's apartment and speaking with her on Tuesday, January 16, Ms. Grimmage provided the following information, which was consistent with what she had told Officer Fava:
1. her daughter M.L. was two-and-a-half years old;
2. the day before, January 15, she witnessed Mr. Williamson with his hand placed inside M.L.'s underwear and shorts, palm facing the child's vaginal area; at that time, his hand was moving up and down;
3. when she challenged his conduct, he became angry and left.
At this point in the investigation, the detective possessed, at a minimum, arguable probable cause. But he made no arrest at this time. Instead, he had the child examined by a physician on Thursday. While the results of the medical examination were not conclusive, they were consistent with the allegation of criminal conduct, and the CPT investigator confirmed that Ms. Grimmage's report of events to the investigator was consistent with the information she had provided the detective.
Still he made no arrest but pursued further investigation. Next, the detective interviewed Mr. Williamson, who, during the first interview, denied molesting the alleged victim, whom he identified by name even though the detective had not disclosed which of Ms. Grimmage's minor daughters was involved. The officer believed this disclosure significant. He temporarily suspended the interview with Mr. Williamson and attempted to verify some of the information Mr. Williamson had provided. The detective received confirmation that Mr. Williamson had told others of threats that Ms. Grimmage had allegedly made to him in November or December. This detective was very experienced in investigating sexual crimes against children and recognized that this could represent a preemptive move on Mr. Williamson's part. Only at that point, Thursday evening, did he arrest Mr. Williamson.
As a matter of law, the information possessed by the detective met the legal requirements of probable cause. A prudent person could have reasonably believed the information provided by Ms. Grimmage, the physician, and the CPT investigator. The information obtained through the course of the investigation would lead a reasonable officer to conclude that the offense of a lewd act on a minor child had likely been committed.
However, Mr. Williamson argues on appeal that the detective's liability and thus the City's derivative liability are established because the detective failed to conduct a proper investigation by ignoring evidence provided by Mr. Williamson that would have exonerated him. We disagree.
To establish probable cause, an officer is required to conduct a reasonable investigation, but the officer does not have to take every conceivable step to eliminate the possibility of convicting an innocent person. Rankin v. Evans, 133 F.3d 1425 (11th Cir. 1998); see also Colosimo v. City of Port Orange, 2005 WL 1421294 (M.D. Fla. June 16, 2005).
The facts and proceedings in Rankin are similar to Mr. Williamson's case. Mr. Rankin, a child care worker, was charged with child abuse, but a grand jury refused to indict him; he sued the arresting deputy and the sheriff's office for liability under 42 U.S.C. § 1983 and added a state claim for false arrest. The trial court denied a defense motion for directed verdict and allowed the case to go to a jury, which returned a substantial verdict in favor of Mr. Rankin. Upon a defense motion for JNOV, the trial court set aside the verdict on the ground that probable cause for the arrest existed as a matter of law. In its opinion affirming the trial court's grant of JNOV, the Eleventh Circuit agreed that probable cause existed as a matter of law. 133 F.3d at 1443. The court discussed the deputy's investigation of the complaint against Mr. Rankin, noting that the deputy had interviewed the three and one-half year old alleged victim, who identified Mr. Rankin by his nickname, and the child's mother. Id. at 1429. The child also made several improbable or inconsistent statements regarding the timing of the abuse. Id. Additionally, the deputy interviewed the child's pediatrician, whose examination had found signs indicating possible sexual abuse. This investigation was held by the court to be legally sufficient.
Mr. Williamson's allegedly exonerating evidence falls into two categories. First, he claims that he gave the detective information that constituted an alibi, i.e., that he was out of Ms. Grimmage's apartment by mid-morning Monday applying for jobs. This information does not conclusively establish an alibi. Furthermore, a police officer is not required to investigate a defendant's alibi before making a probable cause determination. Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996). Second, Mr. Williamson gave the detective information, later confirmed, that Ms. Grimmage had previously threatened to have him arrested for this type of offense should they ever separate and he had related these threats to others. In Mr. Williamson's opinion, this information substantially diminished Ms. Grimmage's credibility. However, Detective Esposito was entitled to rely upon the information Ms. Grimmage gave him as it was reasonable to believe she was telling the truth in light of all the then-known facts. See Weissman v. K-Mart Corp., 396 So. 2d 1164 (Fla. 3d DCA 1981) ("First hand knowledge by an officer is not required; the receipt of information from someone who it seems reasonable to believe is telling the truth is adequate." (citing Salas v. State, 246 So. 2d 621 (Fla. 3d DCA 1979), and Walker v. State, 196 So. 2d 8 (Fla. 3d DCA 1967))). Under the totality of the circumstances, the investigation undertaken by Detective Esposito was objectively reasonable and provided him with probable cause to arrest Mr. Williamson.
In contrast, this court determined that the investigation was legally inadequate in Austrino, 898 So. 2d 955, where no witness with direct knowledge was interviewed by the arresting officer before the arrest. Instead, in Austrino, the investigation was initiated by a report of a witness who was merely suspicious and who had no direct involvement in or knowledge of the alleged crime; the arresting detective then interviewed other third parties who also had no more knowledge than the first. In contrast, Ms. Grimmage told the investigating detective that she actually witnessed the crime and physical evidence did not prove her unworthy of belief. Distinguishing Austrino, we therefore hold that the arrest of Mr. Williamson was based upon probable cause following an objectively reasonable investigation.
Reversed and remanded with instructions to enter a judgment in favor of the City and Detective Esposito.
KELLY, J., and LEVENS, WILLIAM P., ASSOCIATE JUDGE, Concur.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.
NOTES
[1] Clearwater Detective Esposito is now with the Federal Bureau of investigation.