On Motion for Rehearing

ROTHENBERG, J.
The appellants, Miami-Dade County (“the County”) and Sergeant Patricia Se-daño (“Sgt. Sedaño”), the defendants below (collectively, “the Defendants”), appeal the final judgment of false arrest entered in favor of the appellees, Ahmed Asad, Tony Garcia, and Noel Rivera (collectively, “the Plaintiffs”). On March 11, 2009, this Court issued an opinion affirming (J. Roth-enberg, dissenting). The Defendants seek rehearing, rehearing en banc, or certification to the Florida Supreme Court. Because we conclude that the Defendants’ arguments are well taken, we grant rehearing, withdraw the previously filed opinion, and issue the following opinion in its stead.
The Plaintiffs were arrested for assault with a firearm and as principals to an armed burglary with a battery. Rivera was additionally arrested for doing business as a bondsman without a license. These arrests stemmed from the vicious beating of Daniel Walker, an innocent victim, during the execution of an arrest warrant for Shalresia Tomlin by seven or eight bondsmen. It is undisputed that Mr. Walker, who was unaware an arrest war *663 rant had been issued against Ms. Tomlin, was providing transportation for Ms. Tomlin when the vehicle he was driving was stopped by the bondsmen. Walker was then pulled out of his vehicle and severely beaten by the bondsmen although he offered no resistance, presented no threat, and did not interfere with the execution of the warrant.
The Plaintiffs were arrested for their involvement in this attack, but the charges were ultimately dismissed. Thereafter, the Plaintiffs filed a civil lawsuit against Sgt. Sedaño, the arresting officer, and her employer, the County, asserting claims for false arrest, malicious prosecution, and violation of the Plaintiffs’ federal civil rights.
Prior to trial, the trial court granted summary judgment in favor of the County as to the Plaintiffs’ federal civil rights claims, but denied Sgt. Sedano’s and the County’s motions for summary judgment as to the remaining claims. At the conclusion of the evidentiary portion of the trial, the Defendants moved for a directed verdict as to the Plaintiffs’ malicious prosecution claims. The trial court denied the motion. The jury returned verdicts in favor of the Defendants as to the civil rights and the malicious prosecution claims, and in favor of the Plaintiffs as to the false arrest claims, awarding $94,800 to Garcia, $128,910 to Asad, and $88,482 to Rivera. The Defendants subsequently filed a motion for a new trial, which the trial court denied; and the Defendants’ appeal followed.
The Defendants contend the trial court erred in: (1) denying their pre-trial motions for summary judgment as to the malicious prosecution claims; (2) permitting the Plaintiffs to introduce evidence relevant to a claim of malicious prosecution (a claim the Plaintiffs knew they could not prove), but inadmissible and highly prejudicial as to the false arrest claims; (3) denying their motion for a directed verdict as to the malicious prosecution claims; (4) allowing the jury to consider inadmissible and highly prejudicial evidence in deciding the false arrest claims; and (5) denying their motion for a new trial. We agree.
The Plaintiffs presented no evidence of malice, an essential element of the crime of malicious prosecution, and in fact, the Plaintiffs’ own expert admitted at trial, and counsel for the Plaintiffs admit on appeal, that there was no evidence that Sgt. Sedaño acted with malice, and therefore Sgt. Sedaño was immune from liability as a matter of law. Thus, the trial court erred in denying the Defendants’ motions for summary judgment and for a directed verdict as to the malicious prosecution claims. Additionally, since much of the evidence introduced at trial was only admissible to prove the malicious prosecution claims, and was also irrelevant, inadmissible, and prejudicial as to the false arrest claims, the trial court erred in: (1) failing to instruct the jury that it must not consider that evidence in reaching its verdict on the false arrest claims; and (2) not granting the Defendants a new trial, where counsel for the Plaintiffs made the inadmissible, highly prejudicial evidence a feature of the trial.
STANDARD OF REVIEW
The trial court’s evidentiary rulings are subject to an abuse of discretion standard of review. See H & H Elec., Inc. v. Lopez, 967 So.2d 345, 347 (Fla. 3d DCA 2007) (“We review discretionary issues involving the admission of evidence ... for abuse of discretion.”); Hayes v. Wal-Mart Stores, Inc., 933 So.2d 124, 126 (Fla. 4th DCA 2006) (holding that the trial court’s ruling on admissibility of evidence will not be reversed on appeal absent an abuse of discretion). In reviewing a trial court’s denial of a motion for a directed verdict, *664 an appellate court must review the evidence in the light most favorable to the nonmoving party, and must reverse “if there is ‘no evidence upon which the jury could legally base a verdict’ in favor of the non-moving party.” Posner v. Walker, 930 So.2d 659, 665 (Fla. 3d DCA 2006) (quoting Floyd v. Video Barn, Inc., 538 So.2d 1322, 1325 (Fla. 1st DCA 1989)); see also Schreidell v. Shoter, 500 So.2d 228, 232 (Fla. 3d DCA 1986) (“A directed verdict is proper only when the record conclusively shows an absence of facts or inferences from facts to support a jury verdict, viewing the evidence in a light most favorable to the nonmoving party. Therefore, no factual determination is required, and judgment must be entered for the movant as a matter of law.”) (citations omitted). The denial of the Defendants’ motion for new trial is reviewed for an abuse of discretion. See Southwin, Inc. v. Verde, 806 So.2d 586, 587 (Fla. 3d DCA 2002) (“The standard of review for the denial of a motion for new trial is whether or not the trial court abused its discretion.”); Seaboard Sys. R.R., Inc. v. Peeples, 475 So.2d 916, 917 (Fla. 2d DCA 1985) (“The standard for review of the denial of a motion for new trial is whether or not the trial judge abused his discretion.”).
THE TRIAL COURT ERRED IN ALLOWING THE PLAINTIFFS TO PROCEED WITH THEIR MALICIOUS PROSECUTION CLAIMS AND IN DENYING THE DEFENDANTS’ MOTION FOR A DIRECTED VERDICT
The Defendants moved for summary judgment prior to trial and moved for a directed verdict during trial as to the Plaintiffs’ malicious prosecution claims. The trial court denied both motions and permitted: (1) the Plaintiffs to introduce evidence admissible as to the malicious prosecution claims, but inadmissible as to the false arrest claims; (2) the jury to improperly consider this evidence in deciding the false arrest claims; and (3) the jury to improperly assign and calculate damages on the false arrest claims based on evidence inadmissible as to those claims. These errors denied the Defendants their right to a fair trial.
A. The Plaintiffs presented no evidence of malice, an essential element of malicious prosecution
The law in Florida is well settled that a malicious prosecution action requires the plaintiff to prove all of the following six elements: (1) a criminal or civil judicial proceeding was commenced against the plaintiff; (2) the proceeding was instigated by the defendant in the malicious prosecution action; (3) the proceeding ended in the plaintiffs favor; (4) the proceeding was instigated with malice; (5) the defendant lacked probable cause; and (6) the plaintiff was damaged. Kalt v. Dollar Rent-A-Car, 422 So.2d 1031, 1032 (Fla. 3d DCA 1982); see also Adams v. Whitfield,, 290 So.2d 49, 51 (Fla.1974). “The absence of any one of these elements will defeat a malicious prosecution action.” Kalt, 422 So.2d at 1032 (emphasis added). Malice is a fact to be proven by the plaintiff as it is “a necessary ingredient of the charge of malicious prosecution” and it is not synonymous with want of probable cause. White v. Miami Home Milk Producers Ass’n, 143 Fla. 518, 197 So. 125, 126 (1940) (emphasis added). “Malice is not only an essential element of malicious prosecution but it is the gist of this cause of action.” Wilson v. O’Neal, 118 So.2d 101, 105 (Fla. 1st DCA 1960) (emphasis added).
The Plaintiffs presented absolutely no evidence of malice. In fact, the Plaintiffs’ own expert, Philip Sweeting, admitted that Sgt. Sedaño acted without malice. The *665 Plaintiffs were not surprised by Mr. Sweeting’s testimony because he unequivocally testified in his videotaped testimony, prior to trial, that there was no malice. Thus, the Plaintiffs should not, in good faith, have pursued their malicious prosecution claims, and the trial court erred in denying the Defendants’ motion for summary judgment and their subsequent motion for a directed verdict as to the malicious prosecution claims.
B. Sgt. Sedaño was insulated from a malicious prosecution claim as a matter of law
It is undisputed that Sgt. Sedaño contacted and consulted with the State Attorney’s Office prior to making any arrests in this case. The Assistant State Attorney with whom Sgt. Sedaño conferred concluded that Sgt. Sedaño had probable cause to arrest the Plaintiffs. Moreover, Sgt. Sedaño relied on the advice of the Assistant State Attorney, and the State Attorney’s Office made all of the charging decisions. The Plaintiffs’ counsel, who represented the Plaintiffs at trial and in this appeal, admits in his answer brief that “[t]he State Attorney’s charging decision insulated Sgt. Sedaño from liability for malicious prosecution.” The Plaintiffs’ concession on appeal is troubling as it is clear they were in possession of this information well before the trial. Sgt. Se-dano’s immunity from liability for malicious prosecution is well supported by the record.
Counsel for Sgt. Sedaño told the jury in his opening statement that it was the Assistant State Attorney, not Sgt. Sedaño, who made the decision to prosecute the Plaintiffs:
All the efforts from the get-go, Sergeant Sedaño contacted the State Attorney’s office.
Sergeant Sedaño doesn’t keep these gentlemen in jail for months. The prosecutor does.
The evidence will show that they’re asking for all these monies, but the prosecutor made the decision to go forward, despite them having attorneys. She made the decision, the prosecutor in this case, to proceed.
They’re suing her [Sgt. Sedaño] for something called malicious prosecution. They got to prove she is malicious. They’ve got no evidence, so Sergeant Sedaño shouldn’t even be here.
The prosecutor made the decision to prosecute.
Now causation, that’s something you have to prove: that Sergeant Sedaño or the County caused damages.
No, again, the state attorney’s office, separate from the County, completely separate from Sergeant Sedaño, made the decision to keep them in for months.
All this tuberculosis, all this damages of attorney’s fees and so forth, that is the prosecutor’s decision, not Sergeant Sedano’s, not the County’s.
Sergeant Sedaño again, in sum, conclusion, spoke to the state attorney, conferred with the state attorney. It was confirmed with them it was probable cause.
Sergeant Sedaño isn’t a judge, but the state attorney indicated there was probable cause and she proceeded accordingly-
Mr. Fenn presumes to know what in a hypothetical world a judge would do, but the state attorney who was on the ease at that time indicated there was probable cause.
*666 The evidence will be that Sergeant Sedaño checked with the state attorney; that at all times she had probable cause.
There was no malice whatsoever on the part of Sergeant Sedaño. State attorney’s office made the decision to keep these people in jail.
Consistent with opening statements, Sgt. Sedaño testified that she conferred with the Assistant State Attorney “from beginning to end.”
Q: Explain to the ladies and gentlemen of the jury what contact you had with the state attorney regarding this case, particularly in terms of reviewing the probable cause for arrest.
A: I spoke with the assistant state attorney regarding my case from beginning to end. I conferred with her. We reviewed the arrest prior to making the actual physical arrests, we reviewed it together.
Q: At any point in time did she indicate that you didn’t have probable cause to make the arrests?
A: No.
Q: At any point in time did she indicate she wanted to terminate the prosecution to you?
A: No.
Q: Once Shalresia Tomlin signed the back of that [photograph] saying she was sure that these gentlemen, Mr. Asad, Mr. Rivera, Mr. Garcia, were involved in the beating, what’s your obligation at that point as a police officer?
A: Based on her testimony and based on the victim’s testimony and based on her positive identification of the subjects, I have — that establishes probable cause to make a felony arrest.
Q: And you gave the original photo lineups and the arrest affidavits, all of that was turned over to the prosecutor?
A: That’s correct.
Q: From then on it’s the prosecutor’s decision whether to go forward, is that correct?
A: Yes, that’s correct.
Q: Did you review step by step everything you did with that state attorney?
A: Yes, I did.
Q: Tell us about your dealings with the state attorney in this case.... What kind of contact did you have with them regarding Mr. Asad, Mr. Rivera and Mr. Garcia?
A: When I initially received this investigation, usually we don’t meet with the state attorney when we make an arrest on a case until they give us a subpoena for a pre-file conference, which is the time they review the case. It has to be within a certain time frame. But because of the totality of the case and the number of subjects involved, I called the state attorney’s office and requested to speak to a state attorney to help me with the case, to review it before it even went to that stage.
Sgt. Sedaño testified that although she had taken a sworn statement from Ms. Tomlin at the jail on the day of the incident, she brought her to the State Attorney’s Office prior to arresting the Plaintiffs, and Ms. Tomlin was interviewed by and provided the Assistant State Attorney with another sworn statement.
Kathryn Slye, the Assistant State Attorney who was assigned the case involving the beating of Mr. Walker, testified in the civil trial. Ms. Slye testified that she began working on this case prior to any charges being filed. Ms. Slye explained it was her responsibility as the prosecutor to *667 review all of the evidence and make the charging decisions, and in this case she went over all of the documents “in detail, great detail,” before making the charging decisions. A copy of the document she generated reflecting her filing decisions was actually introduced into evidence as Defense Exhibit “J,” and she explained:
This is the document that comes when— when all the paperwork finally comes in to the prosecutor and a filing decision has to be made, at that point this is one of the documents that, actually I choose which charges, the actual charges the State of Florida is going to file against a particular defendant.
Ms. Slye testified that the detective brought her all of the documents, reports, statements, and lineups, which she reviewed before making a charging decision, and that this was done earlier than in other cases. As a result, she testified that she spent “extra time with [Sgt. Sedaño] and with others to make sure that [she] had all the appropriate information before things were charged.” She unequivocally stated, “I made the charging decision and filed the charges against the individuals.”
Lastly, Lt. Ivan Rodriguez was called as a witness by the defense and provided expert testimony, without objection, that Sgt. Sedaño followed County policies and procedures throughout her investigation. He testified that Sgt. Sedaño was working with the State Attorney’s Office while investigating the case; when Sgt. Sedaño concluded that she had probable cause to make the arrests, she presented her case file to the State Attorney’s Office; and the arrests were made after the State Attorney’s Office found that there was probable cause.
Thus, the record is abundantly clear that Sgt. Sedaño consulted with the Assistant State Attorney throughout her investigation, and the Assistant State Attorney: reviewed all of the evidence; determined that probable cause existed to arrest the Plaintiffs in connection with the beating of Mr. Walker; determined whether there was sufficient evidence to prosecute the case and on what charges; filed the charges; and proceeded with the criminal prosecution of the case. The trial court therefore erred in denying the Defendants’ motion for a directed verdict as to those claims.
We also conclude that these arguments were preserved for appeal as counsel for the Defendants argued in his motion for a directed verdict as follows:
[T]he Plaintiffs failed to prove any type of malice against Sergeant Sedaño. That’s critical as to all the claims against her. Their own expert says there was no malice.... He must prove by a preponderance of the evidence that there was — the defendant acted with malice. There’s no proof of that.... [T]hey’ve tried the case without showing malice, Judge.
Counsel for the Defendants additionally argued, citing to section 768.28(7), Florida Statutes (1999), that “the prosecutor was the cause of the damages.” Because the Plaintiffs presented no evidence of Sgt. Sedano’s malice; the unrefuted evidence presented was that Sgt. Sedaño consulted with the Assistant State Attorney prior to arresting the Plaintiffs; and the Assistant State Attorney made the charging decisions in this case, the trial court erred in denying the Defendants’ motion for directed verdict, and the issue was preserved for appeal.
BASED ON THE OBVIOUS AND SUBSTANTIAL PREJUDICE, THE TRIAL COURT ERRED IN DENYING THE DEFENDANTS’ MOTION FOR A NEW TRIAL
The Plaintiffs’ decision to present the malicious prosecution claims to the *668 jury, despite the fact they had absolutely no evidence to support these claims, denied the Defendants their right to a fair trial. By proceeding with their malicious prosecution claims, the Plaintiffs were able to introduce otherwise inadmissible evidence and make otherwise improper arguments to the jury, and the jury was permitted to consider and allocate damages based on evidence inadmissible as to the false arrest claims.
 The Plaintiffs were permitted to introduce, over defense objection, that the Assistant State Attorney subsequently dismissed the charges against the Plaintiffs. While this evidence is relevant in a malicious prosecution action, because one of the elements the Plaintiffs must prove in a malicious prosecution claim is that the charge was terminated in the Plaintiffs’ favor, it was not relevant in a false arrest action, which turns on whether the officer possessed probable cause to make the arrest, not on what occurred after the arrest. “Probable cause is evaluated from the viewpoint of a prudent cautious police officer on the scene at the time of the arrest.” State v. Riehl, 504 So.2d 798, 800 (Fla. 2d DCA 1987) (emphasis added). “It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause.” McCoy v. State, 565 So.2d 860, 861 (Fla. 2d DCA 1990) (emphasis added) (quoting 1 W.R. LaFave, Search and Seizure § 3.2(d) (2d ed. 1987)). Events that occur subsequent to the arrest are irrelevant in a false arrest claim because whether the plaintiff was falsely arrested turns on whether there was probable cause at the time of the arrest, and subsequent events cannot remove the probable cause that existed at the time of the arrest. McCoy, 565 So.2d at 861; Dodds v. State, 434 So.2d 940, 942 (Fla. 4th DCA 1983); see also United States v. Covelli, 738 F.2d 847, 853-54 (7th Cir.1984) (finding that an arrest for passing a counterfeit bill was lawful notwithstanding the bill turned out to be legitimate).
The highly prejudicial error in admitting evidence that the criminal charges against the Plaintiffs were ultimately dismissed was compounded when counsel for the Plaintiffs argued this evidence in his closing argument and the trial court improperly instructed the jury that they could consider this factor in determining whether probable cause existed. Also compounding this error was the introduction of the following evidence, which was only relevant and admissible as to the malicious prosecution claims and inadmissible and improperly considered by the jury regarding the false arrest claims: (1) Asad’s later submission of alibi witnesses; and (2) the attorney’s fees incurred by the Plaintiffs in defending the criminal cases.
The jury’s consideration of Asad’s post-arrest alibi defense to the charges and the attorney’s fees incurred after the Plaintiffs were released from custody was error for the same reason the evidence of the State’s dismissal of the charges was error: events subsequent to the arrest are not relevant to a false arrest claim because the issue is whether probable cause existed at the time of the arrest. See Brodnichi v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.1996) (holding that even if the defendant asserts an alibi defense prior to arrest, a police officer is not required to investigate a defendant’s alibi before making a probable cause determination);[1] see also City of *669 St. Petersburg v. Hackman, 672 So.2d 42, 44 (Fla. 2d DCA 1996) (holding that while a plaintiff may recover reasonable expenses, including attorneys’ fees incurred to secure his release from the illegal restraint, attorneys’ fees incurred after being released and prior to the State Attorney’s decision not to prosecute the case are not recoverable in a false arrest claim); see also City of Miami Beach v. Bretagna, 190 So.2d 364, 365 (Fla. 3d DCA 1966) (quoting Fid. & Deposit Co. of Md. v. Adkins, 222 Ala. 17, 130 So. 552 (1930)) (citation omitted), wherein, this Court stated:
It is well settled that plaintiffs, in actions for false imprisonment, where the damages are specially claimed, may recover for any reasonable and necessary expense incurred as a result of the unlawful imprisonment, including attorney’s fees for services in procuring his discharge. But such fees for defending the plaintiff against the prosecution of the charge, while recoverable in an action for malicious prosecution, are not recoverable in an action for false imprisonment, unless such services are necessary to secure the plaintiffs discharge from the illegal restraint.
The evidence is without dispute that the plaintiff was admitted to bail soon after his confinement in jail, and the fee expended in procuring the bail and his discharge from imprisonment, on principles above stated, was proper element of damages, [b]ut attorney’s fees for defending him against the prosecution incurred after his discharge from imprisonment were not proper elements of damages, and the court erred in admitting such evidence over defendant’s objection.
Because the Plaintiffs possessed no evidence of malice and admit that the State Attorney’s charging decision insulated Sgt. Sedaño as a matter of law from being held liable for malicious prosecution, the Plaintiffs’ introduction of the malicious prosecution action in these proceedings, which allowed them to introduce the evidence previously discussed, was improper. The introduction of this inadmissible evidence, the trial court’s failure to grant a directed verdict as to the malicious prosecution claims, and the trial court’s failure to instruct the jury that it must not consider this evidence as to the false arrest claims, prejudiced the Defendants and denied them their right to a fair trial. The prejudice was compounded by the trial court’s instructions to the jury, over defense objection, that it could consider this evidence in determining the false arrest claims. The trial court therefore erred in denying the Defendants’ motions for a new trial on the false arrest claims.
THE FALSE ARREST CLAIMS
Although the Defendants are entitled to a new trial as to the Plaintiffs’ false arrest claims, we instruct the trial court to reconsider the viability of the false arrest claims based on the exclusion of the inadmissible evidence and the unrebutted admissible evidence.
False arrest is “the unlawful restraint of a person against that person’s will.” Willingham v. City of Orlando, 929 So.2d 43, 48. (Fla. 5th DCA 2006). Probable cause is an affirmative defense to a false arrest claim. Mailly v. Jenne, 867 So.2d 1250, 1251 (Fla. 4th DCA 2004); *670 Jackson v. Navarro, 665 So.2d 340, 342 (Fla. 4th DCA 1995). Probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged. Mailly, 867 So.2d at 1251; Fla. Game & Freshwater Fish Comm’n v. Dockery, 676 So.2d 471, 474 (Fla. 1st DCA 1996). Probable cause must be judged by the facts that existed at the time of the arrest, not evidence subsequently learned or provided to the prosecution. Mailly, 867 So.2d at 1251 (“Probable cause is judged by the facts and legal state of affairs that existed at the time of the arrest.”); Fla. Game, 676 So.2d at 474 (“Hindsight should not be used to determine whether a prior arrest or search was made with probable cause. Events that occur subsequent to the arrest cannot remove the probable cause that existed at the time of the arrest.”) (citations omitted) (emphasis added); McCoy, 565 So.2d at 861 (holding that hindsight should not be used to determine whether a prior arrest or search was made with probable cause); Dodds, 434 So.2d at 942 (holding that events that occur subsequent to the arrest cannot remove the probable cause that existed at the time of the arrest). “[A]n identification or a report from a single credible victim or eyewitness can provide the basis for probable cause .... ” City of St. Peters-burg v. Austrino, 898 So.2d 955, 960 (Fla. 2d DCA 2005) (emphasis added).
When the facts material to a probable cause determination are undisputed, the existence of probable cause is for the court to decide as a matter of law. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1357 (Fla.1994); Austrino, 898 So.2d at 962. The material facts, which are not in dispute, are as follows.
It is undisputed that prior to the arrest of the Plaintiffs, Sgt. Sedano’s investigation revealed that Albert Scaletti (“Scalet-ti”), a licensed bondsman, sought and obtained the assistance of other bondsmen to effectuate the arrest of Ms. Tomlin, who had allegedly violated the conditions of her release on bail. Scaletti, with the assistance of his confederates, drove up in a burgundy car next to Mr. Walker’s car as he was transporting Ms. Tomlin to her cousin’s house. Scaletti, who was seated in the front seat of the burgundy car, pointed a 9mm firearm at Mr. Walker, and ordered Mr. Walker to pull over, saying “[p]ull the f — ing car over, N-!” The burgundy car then cut Mr. Walker off, forcibly causing him to stop in the middle of the street, while a second vehicle with the remainder of Scaletti’s confederates pulled behind Mr. Walker’s car blocking him in. Mr. Walker was not the subject of the warrant and the bonding company had no legal authority over Mr. Walker.
All of the men in the two cars, seven or eight in total, exited the two vehicles with their guns drawn and pointed them at Mr. Walker. One of the armed bondsmen opened Mr. Walker’s car door. Mr. Scal-etti then reached into Mr. Walker’s car, grabbed him by the neck, and hit him in the mouth with his gun “with all of his strength,” dislodging eight of Mr. Walker’s teeth. It is undisputed that Sgt. Sedano’s investigation revealed that several of the bondsmen kicked and beat Mr. Walker, and made racial comments while Mr. Walker was being held at gunpoint by the other bondsmen. It is also undisputed that Mr. Walker was unarmed and provided no resistance; Ms. Tomlin was taken into custody by the bondsmen without her offering any resistance; the beating of Mr. Walker, who offered no resistance, continued after Ms. Tomlin had been taken into custody; and Mr. Walker was left bleeding in the street after the bondsmen left with Ms. Tomlin.
*671 It is also undisputed that Ms. Tomlin told Sgt. Sedaño that she could positively identity all of the men involved. In an attempt to identify the subjects, Sgt. Seda-ño obtained a copy of Ms. Tomlin’s appearance bond. Her investigation revealed that James Viola owned the bonding company that was charged with executing the warrant, and Viola also owned the company that insured this bonding company and others. When Sgt. Sedaño learned that Scaletti, a licensed bondsman, who worked for Viola, had called the police to inform them that he and other bondsmen were going to pick up Ms. Tomlin, she requested the names of all bondsmen insured by Viola’s insurance company from the Department of Insurance. The Plaintiffs’ names were among the names provided by the Department of Insurance. Thereafter, Sgt. Sedaño prepared photographic lineups that included photographs of the Plaintiffs and photographs of individuals unrelated to the bonding business. Both Ms. Tomlin and Mr. Walker positively identified Scal-etti, and Ms. Tomlin positively identified, without any hesitation, the Plaintiffs.[2] Sgt. Sedano’s investigation also revealed that Rivera’s bailbonds license had been revoked in 1996, and therefore, he was not a licensed bondsman at the time of these events.
Prior to making any arrests, Sgt. Seda-ño spoke with the Assistant State Attorney assigned to the case. The Assistant State Attorney agreed there was probable cause to arrest Scaletti for armed burglary and the aggravated battery of Mr. Walker. The Assistant State Attorney also found that based on Ms. Tomlin’s positive identifications of Asad, Garcia, and Rivera, and Mr. Walker’s tentative identifications, probable cause existed to arrest the Plaintiffs and to charge them as principals in the first degree with armed occupied burglary with a battery under section 810.02, Florida Statutes (1999), and aggravated assault with a firearm under section 784.021, Florida Statutes (1999), because all of the bondsmen had their guns drawn and pointed at Mr. Walker while he was dragged from his vehicle and beaten by Scaletti and several of the bondsmen.
It should also be noted that Scaletti was positively identified and arrested on July 14, 1999, before any of the Plaintiffs had been identified. While being transported to the station to be interviewed, he told the detectives that the individuals involved “were all in the same line of work” and they were just doing their jobs. When he was advised of his rights at the station, he declined to speak to the detectives and, therefore, they were unable to obtain the names of the other bondsmen involved. Detective Sedaño did, however, receive telephone calls from several lawyers who stated that they represented some of the bail bondsmen involved in the incident, but each refused to name their clients or to bring them in for questioning, and none provided any information to Sgt. Sedaño to assist her with her investigation.
Although Mr. Walker testified at trial that all of the bondsmen beat him and he *672 positively identified the Plaintiffs at trial as active participants, his identifications were only tentative prior to the Plaintiffs’ arrests. Sgt. Sedaño, however, testified in her deposition and at trial that Ms. Tomlin positively identified the Plaintiffs and specified they were active participants prior to the arrests. However, because Sgt. Seda-no’s notes and reports do not specifically state that all of the bondsmen beat Mr. Walker, and because the trial court must view the evidence in the light most favorable to the Plaintiffs, and only consider the material undisputed evidence, the trial court’s analysis must be based on the following premises: all of the bondsmen were armed; they all held Mr. Walker at gunpoint while he was forcibly removed from his car and beaten; not all of the bondsmen actively participated in the beating; Ms. Tomlin positively identified the Plaintiffs as being present during these events; and Mr. Walker tentatively identified the Plaintiffs as being active participants.
In Florida, it is well-established that mere presence and knowledge that a crime is being committed are insufficient to prove participation in a criminal offense. The undisputed facts Sgt. Sedaño relied on in arresting the Plaintiffs, however, were that all of the bondsmen were armed with firearms; all of them exited their cars with their guns drawn; and all of them, including the Plaintiffs, continued to point their firearms at Mr. Walker while Sealetti hit Mr. Walker in the mouth with a firearm while Mr. Walker was seated in his vehicle. All of the bondsmen continued to point their firearms at Mr. Walker while he was dragged out of his vehicle and beaten by Sealetti and some of the bondsmen.
Under Florida law, both the actor and those who aid and abet in the commission of a crime are principals in the first degree. Staten v. State, 519 So.2d 622, 624 (Fla.1988). The principal statute provides as follows:
Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.
§ 777.011, Fla. Stat. (1999) (emphasis added).
Although mere presence at the scene and knowledge that an offense is being committed does not equate to participation with criminal intent, West v. State, 585 So.2d 489, 441 (Fla. 4th DCA 1991, the evidence Sgt. Sedaño had at the time she arrested the Plaintiffs, when considered in the light most favorable to the Plaintiffs, was that the Plaintiffs, who accompanied Sealetti to pick up Ms. Tomlin, aided Sealetti when he committed armed burglary with a battery and an aggravated assault against Mr. Walker.
Mr. Walker was stopped and detained by Sealetti and the Plaintiffs, who had no legal authority over him. After Mr. Walker was stopped and while he was being restrained by all of the bondsmen, who exited the vehicles with guns drawn and pointed at him, he was attacked by Sealetti, forcibly removed from his vehicle, and beaten severely by several of the armed bondsmen, while being taunted with racial epithets by the other bondsmen. Mr. Walker was unarmed, offered no resistance, and did nothing to interfere with the execution of the warrant. Whether the Plaintiffs personally kicked and beat Mr. Walker, or the Plaintiffs stood guard over Mr. Walker and Ms. Tomlin while: (1) one *673 of the bondsmen reached into Mr. Walker’s car and opened the door; (2) Mr. Scaletti hit Mr. Walker in the mouth with a gun, grabbed him by the neck, and pulled him from his car; and (3) several other bondsmen beat Mr. Walker, is immaterial, because in either event, the Plaintiffs were principals to these criminal acts. Because Sgt. Sedano’s pre-arrest investigation revealed that the Plaintiffs assisted Scaletti in the stop of Mr. Walker, over whom they had no lawful authority, and at a minimum, stood guard over Mr. Walker with guns drawn and pointed at Mr. Walker while Scaletti and several of the other bondsmen kicked and beat Mr. Walker, who was unarmed and offered no resistance, provided sufficient evidence to establish probable cause that the Plaintiffs did “some act to assist” Scaletti in committing these crimes. See Terry v. State, 668 So.2d 954, 964-65 (Fla.1996) (finding that while Terry did not commit the aggravated assault, robbery, or murder, because he provided the handgun used in the assault and the assault furthered the robbery and murder by keeping the victims separated, he was properly convicted as a principal to these offenses); Dayes v. State, 869 So.2d 58, 59 (Fla. 3d DCA 2004) (finding that because Dayes drove the co-defendant to the encounter with the victims and handed a gun to the co-defendant who shot the victim, Dayes was guilty as a principal to the shooting); A.D.W. v. State, 667 So.2d 485 (Fla. 2d DCA 1996) (upholding the defendant’s burglary conviction as a principal based upon his presence with the group who broke into the vehicle and the evidence that he accompanied the group as they went from car to car, burglarizing them); A.B.G. v. State, 586 So.2d 445, 447 (Fla. 1st DCA 1991) (finding that although A.B.G. did not personally steal condoms from the store, because he entered the store with the other boys who proceeded directly to the condom display, stood elbow-to-elbow with the boy who stuffed the condoms into his pocket, and kept looking at the display and then towards the front of the store, there was sufficient evidence to support a finding that he intended that the crime be committed and assisted in its commission); Norris v. State, 360 So.2d 476 (Fla. 3d DCA 1978); Owens v. State, 289 So.2d 472, 473 (Fla. 2d DCA 1974) (upholding Owens’ conviction as a principal to the beating of the victim even though there was no evidence to indicate that he was one of the individuals who struck the victim, where Owens entered the restroom with Lavon and Dicks, he was present when the beating by Lavon and Dicks took place, and he left with Lavon and Dicks thereafter).
The evidence supporting Sgt. Se-dano’s decision to arrest the Plaintiffs as principals in the instant case need not reach the elevated standard required to sustain a conviction, as the standard of proof for probable cause only requires a probability of criminal activity. Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). “[T]he nature of the [probable cause] determination itself ... does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands....” Gerstein v. Pugh, 420 U.S. 103, 121, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Probable cause “exists where an officer ‘has reasonable grounds to believe that the suspect has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction.’ ” Chavez v. State, 832 So.2d 730, 747 (Fla.2002) (quoting Blanco v. State, 452 So.2d 520, 523 (Fla.1984)); see also Mailly, 867 So.2d at 1251 (quoting Fla. Game, 676 So.2d at 474), which held as follows:
To show probable cause in a false arrest situation, it is not necessary that the *674 arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged.
As the courts around this state have said, “[t]o establish probable cause, an officer is required to conduct a reasonable investigation, but the officer does not have to take every conceivable step to eliminate the possibility of convicting an innocent person[,]” City of Clearwater v. Williamson, 938 So.2d 985, 990 (Fla. 2d DCA 2006), and law enforcement officers are afforded some latitude for error. Austrino, 898 So.2d at 958 (citing Lee v. Geiger, 419 So.2d 717, 719 (Fla. 1st DCA 1982)). “[T]he receipt of information from someone who it seems reasonable to believe is telling the truth is adequate.” Williamson, 938 So.2d at 991 (quoting Weissman v. K-Mart Corp., 396 So.2d 1164, 1167 (Fla. 3d DCA 1981)).
CONCLUSION
Because the Plaintiffs neither possessed nor presented any evidence of malice, and they admit that Sgt. Sedaño was immune from a malicious prosecution action, the trial court erred in: (1) denying the Defendants’ motion for a directed verdict and submitting the Plaintiffs’ claims of malicious prosecution to the jury; (2) permitting the jury to consider the evidence only admissible to the Plaintiffs’ malicious prosecution claims when considering the evidence regarding the false arrest claims; and (3) permitting the jury to apportion damages based on this inadmissible evidence. These errors were compounded by the fact that counsel for the Plaintiffs made the evidence relevant to the malicious prosecution action a feature of the trial, which denied the Defendants their right to a fair trial. On remand, the trial court is instructed to reconsider the viability of the Plaintiffs’ false arrest claims in light of this opinion, the evidence presented, and the relevant case law.
Reversed and remanded with instructions.
CORTINAS, J., concurs.

. While Sgt. Sedaño was not required to investigate Asad’s alibi defense, the record reflects that she investigated both his pre-arrest alibi defense and his post-arrest alibi defense. Pre-arrest, Asad claimed he was with his wife. Sgt. Sedaño's investigation revealed that Asad was not married. Post-arrest, Asad’s counsel provided Sgt. Sedaño with a list of witnesses *669 he claimed would provide her with evidence that Asad was not present during the events in question. However, although Sgt. Sedaño went to the homes of each listed witness, left her card, asked them to call her, and called them, they refused to speak with her or to provide her with any information.

. Sgt. Sedaño and Mr. Walker testified at trial that Mr. Walker also tentatively identified at least two of the Plaintiffs, and Mr. Walker testified that all of the men, including the Plaintiffs, beat him. Because the Plaintiffs called into dispute whether Mr. Walker, when interviewed by Sgt. Sedaño, told her that all of the men participated in the beating and that he had tentatively identified the Plaintiffs, and because we must consider the evidence in the light most favorable to the Plaintiffs, we do not consider these factors in determining whether, as a matter of law, Sgt. Sedaño possessed probable cause to arrest the Plaintiffs. Additionally, although Mr. Walker positively identified all three Plaintiffs at trial, because these identifications were made subsequent to the arrest of the Plaintiffs, these in-court identifications also are irrelevant to the issue of probable cause.